UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MARCIA COLLINS,

     Plaintiff,                 **CASE NO. _____**

v.                                **CIVIL DIVISION**

MERAKAI INSTALLERS, LLC and
GOODLEAP, LLC,

     Defendants.

_____/

## DEFENDANT GOODLEAP, LLC'S
## <u>NOTICE OF REMOVAL TO FEDERAL COURT</u>

Defendant, GOODLEAP, LLC ("GoodLeap"), pursuant to 28 U.S.C. §§ 1441(a), 1446(a), and 1331, hereby files its notice of removal of that action filed by Plaintiff MARCIA COLLINS ("Plaintiff"), in the Fourteenth Judicial Circuit Court in and for Washington County, Florida to the United States District Court for the Northern District of Florida. In support thereof, GoodLeap states as follows:

## <u>PROCEDURAL BACKGROUND</u>

On or about October 19, 2023, Plaintiff filed her complaint (the "Complaint") in that certain action styled *Marcia Collins v. Merakai Installers, LLC and GoodLeap, LLC,* case no. 23-CA-000111, in the Circuit Court of the Fourteenth Judicial Circuit Court in and for Washington County, Florida (the

"State Court Action").  GoodLeap was served with Plaintiff's Complaint on November 6, 2023.

## GROUNDS FOR REMOVAL UNDER 28 U.S.C. § 1331

Removal of the State Court Action to the United States District Court for the Northern District of Florida, Panama City division is proper pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1331, because the State Court Action is a civil action founded on a claim or right arising under the laws of the United States.  This Court has original jurisdiction over the subject matter of Plaintiff's claims asserted in the State Court Action because federal questions have been alleged therein relating to consumer disclosures. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.")

Specifically, Plaintiff purports to assert claims against GoodLeap under the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. § 7001[1] and the Truth and Lending Act.  In the State Court Action, Plaintiff alleges "[a]t the time of the transaction, the Defendants failed to give the necessary disclosures as required under The E-Sign Sct (*see* 15 U.S.C. § 7001(c)(1)(a)) and the Truth and Lending Act (TILA)." *See* Compl., at ¶ 31. Moreover, Plaintiff asserts that "GOODLEAP was the initial creditor in the

---

[1] Out of an abundance of caution, GoodLeap asserts that it does not concede that the E-Sign Act creates a private right of action.

transaction and violated the TILA." *See* Compl., at ¶ 46.  Accordingly, removal is proper because Plaintiff asserts claims against GoodLeap which arise from federal statutes, and the district courts have original jurisdiction over such claims.

## **COMPLIANCE WITH PROCEDURAL REQUIREMENTS**

Pursuant to 28 U.S.C. § 1441(a), venue of the removal action is proper in the United States District Court for the Northern District of Florida, Panama City Division, because that is the district and division embracing the place where the State Court Action is pending.

In accordance with 28 U.S.C. § 1446(a), a copy of all executed process, pleadings, and orders in the State Court Action served upon GoodLeap are attached hereto as **Composite Exhibit 'A'**.  This Notice of Removal is timely filed because this Notice is being filed on or before the 30th day following service.  28 U.S.C. § 1446(a); Fed. R. Civ. P. 6(a)(1).  Pursuant to 28 U.S.C. § 1446(d), GoodLeap has contemporaneously filed a copy of this Notice of Removal with the Clerk of the Fourteenth Judicial Circuit Court in and for Washington County, Florida.

**WHEREFORE**, Defendant GOODLEAP, LLC respectfully removes this action from the Fourteenth Judicial Circuit Court in and for Washington

County, Florida to the United States District Court for the Northern District

of Florida, Panama City Division.

Dated this 27th day of November, 2023.

Respectfully submitted,

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**
*Counsel for GoodLeap, LLC*
1905 N.W. Corporate Blvd., Suite 310
Boca Raton, Florida 33431
P:  561-343-6900 | F:  561-483-7321

By:    */s/ T.W. Anderson*
      **Terrance W. Anderson, Jr., Esq.**
      Florida Bar No. 27426
      TW.Anderson@nelsonmullins.com
      Jenny.Sica@nelsonmullins.com

## CERTIFICATE OF SERVICE

I CERTIFY THAT on November 27, 2023, a true and correct copy of the

foregoing was served on all parties listed in the attached service list.

By:    */s/ T.W. Anderson*
      **Terrance W. Anderson, Jr., Esq.**
      Florida Bar No. 27426

## SERVICE LIST

**THE CONSUMER PROTECTION
ATTORNEY, PA**
301 W. Platt. St., #216
Tampa, FL 33606
bryant@theconsumerprotectionattorney.com
eservice@theconsumerprotectionattorney.com

**CARVER, DARDEN, KORETZKY, TESSIER, FINN,
BLOSSMAN & AREAUX, LLC**
151 W. Main Street, Suite 200
Pensacola, FL 32502
rushing@carverdarden.com
morock@carverdarden.com
hahn@carverdarden.com

# COMPOSITE EXHIBIT 'A'

 

New Search   Expand All

| Case Number | Filed Date | Case Type | Status | Contested | Jury Trial |
|---|---|---|---|---|---|
| 672023CA000111CAAXMX [23000111CAAXMX] | 10/19/2023 | Circuit Civil 3-C | OPEN | NO | YES |

| Filing Date | Description | Active | Contested | Judgment Date |
|---|---|---|---|---|
| 10/19/2023 | OTHER | YES | NO | - |

| Party Name | Party Type | Attorney | Bar ID |
|---|---|---|---|
| PATTERSON, CHRISTOPHER NIDA | JUDGE | | |
| Collins, Marcia   Search This Party | PLAINTIFF | DUNIVAN, BRYANT HOUSTON | 102594 |
| Goodleap LLC   Search This Party | DEFENDANT | LABARGE, SOPHIE MADELEINE | 1025145 |
| MERAKI INSTALLERS LLC   Search This Party | DEFENDANT | | |

## Dockets

Page : 1   [    ] [    ] [    ]   [ 10 ▼ ]

| Image | Doc # | Action Date | Description | Pages |
|---|---|---|---|---|
| 📄 | 13 | 11/21/2023 | DEFENANT MERAKI INSTALLERS, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT | 27 |
| 📄 | 12 | 11/08/2023 | ACCEPTANCE OF PROCESS | 2 |
| | 11 | 11/06/2023 | Defendant Attorney: Terrance W. Anderson Assigned to Goodleap LLC | |
| 📄 | 10 | 11/06/2023 | NOTICE OF APPEARANCE AS COUNSEL FOR DEFENDANT GOODLEAP, LLC AND EMAIL DESIGNATIONS | 2 |
| 📄 | 8 | 10/19/2023 | COMPLAINT | 7 |
| 📄 | 7 | 10/19/2023 | CIVIL COVER SHEET | 3 |
| 📄 | 9 | 10/19/2023 | APPLICATION FOR DETERMINATION OF CIVIL INDIGENT STATUS--DENIED | 1 |
| | 6 | 10/19/2023 | Payment received: $400.00 Receipt Number 23 2023005613 | |
| | 5 | 10/19/2023 | Assessment 1 Total Assessed $400.00 Balance Remaining $0.00 | |
| | 4 | 10/19/2023 | Assessment 1 assessed at sum $400.00 | |

## Judge Assignment History

## Court Events

## Financial Summary

## Reopen History

** Pursuant to Florida Statutes and Florida Rules of Court Procedure, records that have been designated as expunged, sealed or confidential may not be available through this service. For additional information on specific records please contact the Clerk of Court.

Privacy - Terms

Filing # 183686221 E-Filed 10/10/2023 08:16:07 PM

IN THE CIRCUIT/COUNTY COURT OF THE __Fourteenth__ JUDICIAL CIRCUIT
IN AND FOR __Washington__ COUNTY, FLORIDA

__Marcia Collins__
_____
Plaintiff/Petitioner or In the Interest of

__Meraki Installers, LLC, et al.__ vs.
_____
Defendant/Respondent

CASE NO. __23-CA-111__

## APPLICATION FOR DETERMINATION OF CIVIL INDIGENT STATUS

**Notice to Applicant:** If you qualify for civil indigence, the filing and summons fees are waived; other costs and fees are not waived.

1. I have _____ dependents. *(Include only those persons you list on your U.S. Income tax return.)*
   Are you Married?...Yes..✗No   Does your Spouse Work?...Yes...No   Annual Spouse Income? $_____

2. I have a net income of $_____ ∅ paid ( ) weekly ( ) every two weeks ( ) semi-monthly ( ) monthly ( ) yearly ( ) other _____
   *(Net income is your total income including salary, wages, bonuses, commissions, allowances, overtime, tips and similar payments, minus deductions required by law and other court-ordered payments such as child support.)*

3. I have other income paid ( ) weekly ( ) every two weeks ( ) semi-monthly ( ) monthly ( ) yearly ( ) other _____
   *(Circle "Yes" and fill in the amount if you have this kind of income, otherwise circle "No")*

| | | | |
|---|---|---|---|
| Second Job ....................... Yes $_____ (No) | Veterans' benefits ............................... Yes $_____ (No) |
| Social Security benefits | Workers compensation ......................... Yes $_____ (No) |
|   For you........................... Yes $_____ (No) | Income from absent family members ....... Yes $_____ (No) |
|   For child(ren) ................. Yes $_____ (No) | Stocks/bonds...................................... Yes $_____ (No) |
| Unemployment compensation......... Yes $_____ (No) | Rental income..................................... Yes $_____ (No) |
| Union payments ....................... Yes $_____ (No) | Dividends or interest............................ Yes $_____ (No) |
| Retirement/pensions ................. Yes $_____ (No) | Other kinds of income not on the list ....... Yes $_____ (No) |
| Trusts ..................................... Yes $_____ (No) | Gifts ................................................. Yes $_____ (No) |

I understand that I will be required to make payments for costs to the clerk in accordance with §57.082(5), Florida Statutes, as provided by law, _although I may agree to pay more_ if I _choose to do so._

4. I have other assets: *(Circle "yes" and fill in the value of the property, otherwise circle "No")*

| | | |
|---|---|---|
| Cash ................................... Yes $_____ (No) | Savings account.......................................... Yes $ 71,000,ºº No |
| Bank account(s) ................... (Yes) $ 1,000.ºº No | Stocks/bonds ............................................. Yes $_____ No |
| Certificates of deposit or | Homestead Real Property* ............................ (Yes) $ 100,000 No |
| Money market accounts ........... Yes $_____ (No) | Motor Vehicle* ........................................... (Yes) $ 16,000 No |
| Boats* ............................... Yes $_____ (No) | Non-homestead real property/real estate* ....... Yes $_____ (No) |
| | Other assets* ............................................ Yes $_____ (No) |

Check one: I ( ) DO (✗) DO NOT expect to receive more assets in the near future. The asset is _____

5. I have total liabilities and debts of $_____ as follows: Motor Vehicle $_____, Home $ ∅, Boat $_____, Non-homestead Real Property $_____, Child Support paid direct $_____, Credit Cards $ 600.ºº, Medical Bills $_____, Cost of medicines (monthly) $ 60.ºº, Other $_____.

6. I have a private lawyer in this case.......... ✓ Yes                     NO

A person who knowingly provides false information to the clerk or the court in seeking a determination of indigent status under s. 57.082, F.S. commits a misdemeanor of the first degree, punishable as provided in s.775.082, F.S. or s. 775.083, F.S. I attest that the information I have provided on this application is true and accurate to the best of my knowledge.

Signed on 10- 9th ____, 20 23.
3-12-1963
Year of Birth     Last 4 digits of Driver License or ID Number
Email address: marciacollins2010@gmail.com
4165 Hwy 79 Vernon Fl 32462
Address: Street, City, State, Zip Code

_Marcia Collins_
Signature of Applicant for Indigent Status
Print Full Legal Name _Marcia Collins_
Phone Number/s: 850-258-8076

This form was completed with the assistance of: _____
Clerk/Deputy Clerk/Other authorized person.

### CLERK'S DETERMINATION

Based on the information in this Application, I have determined the applicant to be ( ) Indigent (✗) Not Indigent, according to s. 57.082, F.S.
Dated on _____, 20 ____.

Clerk of the Circuit Court
By _____ Deputy Clerk

**APPLICANTS FOUND NOT TO BE INDIGENT MAY SEEK REVIEW BY A JUDGE BY ASKING FOR A HEARING TIME. THERE IS NO FEE FOR THIS REVIEW.**
Sign here if you want the judge to review the clerk's decision _____

07/01/2014 - upd 7-20-18

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

I.    **CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE <u>FOURTEENTH</u>   JUDICIAL CIRCUIT, IN AND FOR <u>WASHINGTON</u>   COUNTY, FLORIDA

<u>Marcia Collins</u>
Plaintiff

Case # _____
Judge _____

vs.

<u>Goodleap LLC, MERAKI INSTALLERS LLC</u>
Defendant

II.    **AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☒  $50,001- $75,000
☐  $75,001 - $100,000
☐  over $100,000.00

III.    **TYPE OF CASE**    (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

☐ Condominium
☒ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐ Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
☐ Other
    ☐ Antitrust/Trade regulation
    ☐ Business transactions
    ☐ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☐ Discrimination—employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
      ☐ Residential Evictions
      ☐ Non-residential Evictions
☐ Other civil (non-monetary)

### COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

  **IV.**    **REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☐ Punitive

  **V.**    **NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

    <u>6</u>

  **VI.**    **IS THIS CASE A CLASS ACTION LAWSUIT?**
      ☐ yes
      ☒ no

  **VII.**    **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
      ☒ no
      ☐ yes If "yes," list all related cases by name, case number, and court.

  **VIII.**    **IS JURY TRIAL DEMANDED IN COMPLAINT?**
      ☒ yes
      ☐ no

  **IX.**    **DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
      ☐ yes
      ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Bryant H Dunivan Jr.</u>      Fla. Bar # <u>102594</u>
      Attorney or party            (Bar # if attorney)

<u>Bryant H Dunivan Jr.</u>      <u>10/19/2023</u>
 (type or print name)       Date

# IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
## IN AND FOR WASHINGTON COUNTY, FLORIDA
## CIVIL ACTION

MARCIA COLLINS,

                                                 CASE NO.:   23-CA-

               Plaintiff,                  JURY TRIAL DEMANDED

v.

MERAKI INSTALLERS, LLC and
GOODLEAP, LLC

               Defendants.

_____/

## COMPLAINT

Plaintiff, MARCIA COLLINS (hereinafter "Plaintiff"), by and through the undersigned counsel, files this Complaint against MERAKI INSTALLERS, LLCand GOODLEAP, LLC and as grounds state:

## PARTIES

1.     This is an action for damages that exceeds $50,000, exclusive of costs and attorney's fees.

2.     Plaintiff, MARCIA COLLINS, is a Washington County, Florida resident.

3.     Defendant, MERAKI INSTALLERS, LLC ("MERAKI"), is a Florida limited liability company that does business in this county by purportedly providing construction and solar materials to residents of the state of Florida.

4.     Defendant, GOODLEAP, LLC ("GOODLEAP"), is a Delaware limited liability company that does business in this county by purportedly providing roofing and solar systems to residents of the state of Florida.

5.     Defendant GOODLEAP is the financing company for MERAKI. As they paid for the product and services sold by MERAKI, the FTC Holder Rule applies. *See 16 CFR § 433.2.*

6.      Venue is proper at the property at issue in this litigation is located in this county.

## GENERAL ALLEGATIONS

7.      Plaintiff first met with Defendant MERAKI representatives regarding procuring solar services at their property in this County.

8.      During a sales presentation at the property, the Plaintiff was told that the installation of the solar system would greatly offset or eliminate her utility usage.

9.      Plaintiff was then presented with a sales presentation.

10.     It appears that no valid e-sign consent was provided to the Plaintiff prior to being asked to execute the sales agreement. As a result of same, it appears that any disclosures purportedly given in the agreement were improper, as the e-sign consent must predate the parties agreement.

11.     At no point in the sales presentation was the Plaintiff told that these amounts were estimated.

12.     At no point in the sales presentation was the Plaintiff told that it was unknown if this generation could occur.

13.     Despite these representations, this did not occur.

14.     All conditions precedent to this suit has been met or waived.

15.     Plaintiff has engaged The Consumer Protection Attorney, PA, and has agreed that they are owed a reasonable fee for the work performed. Consistent with the agreement between the parties, as the prevailing party, Plaintiff may seek reimbursement of these amounts paid from Defendants.

## COUNT I - DECEPTIVE AND UNFAIR TRADE PRACTICES

16.     Plaintiff realleges and reincorporates allegations 1 - 15 as if fully set forth herein.

17.     This is an action for damages and injunctive relief under the Florida Deceptive and Unfair Trade Practice Act (Fla. Stat. 501.201, et. seq.)

18.    Defendant is a business engaged in a trade or practice or commerce is defined under Fla. Stat. 501.203.

19.    Plaintiff is a consumer as defined by that act.

20.    Defendants offer and sell goods (in the form of roofing materials) and services (in the form of roofing and solar Solar System services) to consumers by using deceptive acts in furtherance of a trade or commerce; namely, the false representation of the utility of solar Solar System, including that it would eliminate or virtually eliminate a utility bill, that a specific amount of generation of the Solar System could be achieved, that the agreements between the parties were valid and binding, despite not giving the proper disclosures under the E-Sign Act (*See 15 U.S.C. § 7001(c)(1)(a); also Fla. Stat. § 668.50)*, not allowing the Plaintiff to read the contract in depth at the time of signing, not providing the contract or sales materials in the Plaintiff's native language, not properly installing the Solar System, not properly permitting the Solar System, not responding to customer inquiries in a timely manner, and being unable to complete their contracts timely with consumers in the state of Florida.

21.    As a result of these unfair and deceptive acts, Plaintiff was damaged.

WHEREFORE, Plaintiff, requests actual damages, compensatory damages stemming from the misrepresentations, an injunction to enjoin the Defendants from advertising or procuring clients in this manner and using a deceptive sales pitch or from enforcing those agreements, emotional damages, attorney's fees and costs, for interest (pre and post-judgment), and for any and all other relief this Court deems just and proper.

## COUNT II - FRAUD IN THE EXECUTION

22.    Plaintiff realleges and reincorporates allegations 1 - 15 as if fully set forth herein.

23.    Plaintiff was presented with an electronic document, which did not properly afford Plaintiff time to review the contract in a manner that allowed him to form any intent to execute any agreement.

24.     Further, the agreement was not provided in a language that Plaintiff could readily communicate in.

25.     All that Plaintiff was told is that the contract they were signing mirrored the sales pitch they were presented with and would match the installed system.

26.     This is patently false. The Plaintiff in this cause of action was told that the system they were building was one which would meet their needs to eliminate electricity bills.

27.     At no point was Plaintiff told that they "estimated" this data in their sales presentation.

28.     At no point was Plaintiff told that the "plan" and "agreement" could change.

29.     Clearly, the agreed upon "deal" and the written "deal" contains material changes, none of which were represented by the Defendants.

WHEREFORE, Plaintiff, requests actual damages, an injunction to enjoin Defendant from advertising or procuring clients in this manner, emotional damages, attorney's fees and costs, for interest (pre and post-judgment), and for any and all other relief this Court deems just and proper.

## COUNT III - RESCISSION

30.     Plaintiff realleges and reincorporates allegations 1 - 15 as if fully set forth herein.

31.     At the time of the transaction, the Defendants failed to give the necessary disclosures as required under The E-Sign Act (*See 15 U.S.C. § 7001(c)(1) (a); also Fla. Stat. § 668.50)* and the Truth and Lending Act (TILA), including, but not limited to failing to provide statutorily required disclosures of a three day cooling off period as the sale occurred at the Plaintiff's Home, by not providing the true cost of financing on the transaction as would be required under a Mortgage, and by not providing the E-Sign Consent ahead of delivering items to the Plaintiff electronically.

32.     As a result of these failures, Plaintiff has been damaged, including actual damages and emotional damages arising from increased electrical bills that were to be eliminated AND improper reporting on Plaintiff's credit.

33.     As a result of these failures, Plaintiff has a 3-year right of rescission pursuant to 15 USC 1635(f). Plaintiff has tendered this notice to the Defendants named herein.

WHEREFORE, Plaintiff, demands judicial enforcement of the right to rescind, for actual damages, statutory damages, attorney's fees and costs, and for any other relief this court deems just and proper.

## COUNT IV - BREACH OF CONTRACT
## [PLEAD IN THE ALTERNATIVE TO COUNTS I - III]

34.     Plaintiff realleges and reincorporates allegations 1 - 15 as if fully set forth herein.

35.     If unsuccessful in Counts I - III, Plaintiff will have been found to have a contract between Defendant, MERAKI, and Defendant, GOODLEAP.

36.     That contract is for a solar panel system that would eliminate any and all use of "on-grid" electricity or significantly minimize that use.

37.     Moreover, the completion date was to be by March 1, 2023; however, it was not completed and has not produced electricity to date.

38.     As a result, the Defendants' have breached their agreement between the parties.

39.     This breach has caused damages in excess of $60,000.00.

WHEREFORE, Plaintiff demands actual damages, interest (pre and post-judgment), attorney's fees and costs, and for any other relief this court deems just and proper.

## COUNT V - AVOIDING FRAUDULENT TRANSFERS

40.     Plaintiff realleges and reincorporate allegations 1 - 15 as if fully set forth herein.

41.     This action is being brought under Fla. Stat. 726.110(a).

42.     Upon information and belief, Defendant and its principals and subsidiaries have a shared business relationship that allows them to shift assets in an effort to hinder or delay the ability of Plaintiff to recover damages.

43.     As this suit requests damages from these entities, who may improperly transfer funds to avoid such collection, any monetary transfers, assignments of contracts, or use of funds obtained in furtherance of the behavior complained of herein must be avoided.

44.     Absent avoidance of these transfers, Plaintiff is unable to perfect a judicial lien against these assets and obtain justice.

WHEREFORE, Plaintiff requests judgment in their favor, that any transfer between MERAKI and its principals be avoided, for attorney's fees and costs, and any and all other relief this Court deems just.

## COUNT VI - TILA
## AS TO GOODLEAP

45.     Plaintiff realleges and reincorporate allegations 1 - 15 as if fully set forth herein.

46.     Defendant GOODLEAP was the initial creditor in the transaction violated the TILA.

47.     The cash price of the systems were improperly inflated because these were financed transactions.

48.     The increase was to cover the fees that were charged to MERAKI by the financial institutions.

49.     The true amount of the loan is the amount of the proceeds that were delivered to MERAKI, as the seller.

50.     Because this amount was less than the disclosed Amount Financed, the disclosure of the Amount Financed was too high.

51.     Plaintiff was charged more because of this TILA violation.

52.     Except for permissible fees properly disclosed, the difference between the amount delivered to MERAKI and the disclosed Amount Financed was an undisclosed Finance Charge.

53.     The Defendant actions in violation of TILA were a proximate cause of injury to named Plaintiffs and each member in the putative main class and each subclass.

WHEREFORE, Plaintiffs seek judgment in their favor, for damages, for attorney's fees and court costs, for interest (pre-judgment and post-judgment), and for any other relief, this court deems just.

<u>**DEMAND FOR JURY TRIAL**</u>
Plaintiff demand a jury trial for all issues so triable.


Respectfully submitted,

THE CONSUMER PROTECTION
ATTORNEY, PA
Attorneys for Plaintiff.
301 W. Platt St., #216.
Tampa, FL 33606
Phone: 813.252.0239
Email:
bryant@theconsumerprotectionattorney.com
eservice@theconsumerprotectionattorney.com


By:     /s/ Bryant H. Dunivan Jr.
         Bryant H. Dunivan Jr., Esq.
         Fla. Bar No.: 102594
         MI P. No.: 85206

# IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT IN AND FOR WASHINGTON COUNTY, FLORIDA

MARCIA COLLINS,

     Plaintiff,

v.

**CASE NO. 2023-CA-000111**

MERAKI INSTALLERS, LLC and
GOODLEAP, LLC,

**CIVIL DIVISION**

     Defendants.

_____/

### NOTICE OF APPEARANCE AS COUNSEL FOR DEFENDANT GOODLEAP, LLC AND EMAIL DESIGNATIONS

**PLEASE TAKE NOTICE THAT** the undersigned attorneys of the law firm NELSON MULLINS RILEY & SCARBOROUGH, LLP appear as counsel for Defendant GOODLEAP, LLC and designate their primary and secondary e-mail addresses for service in this matter as listed below pursuant to Fla. R. Gen. Prac. & Jud. Admin. 2.516.

Dated this 6th day of November, 2023.

[*Signature block on page to follow*]

Case No. 2023-CA-000111

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**
*Counsel for Defendant Goodleap, LLC*
1905 N.W. Corporate Blvd., Suite 310
Boca Raton, Florida 33431
P: 561-343-6967  |  F: 561-483-7321

By:     */s/ Terrance W. Anderson, Jr.*
        **Terrance W. Anderson, Jr., Esq.**
        Florida Bar No. 27426
        TW.Anderson@nelsonmullins.com
        Jenny.Sica@nelsonmullins.com


By:     */s/ Sophie M. Labarge*
        **Sophie M. Labarge, Esq.**
        Florida Bar No. 1025145
        Sophie.Labarge@nelsonmullins.com
        Jenny.Sica@nelsonmullins.com

## CERTIFICATE OF SERVICE

I CERTIFY that on November 6, 2023 a copy of the foregoing was served on all parties on the attached service list in the manner set forth therein in compliance with Fla. R. Gen. Prac. & Jud. Admin. 2.516.


By:     */s/ Terrance W. Anderson, Jr.*
        **Terrance W. Anderson, Jr., Esq.**
        Florida Bar No. 27426

## SERVICE LIST

**THE CONSUMER PROTECTION ATTORNEY, P.A.**
Bryant H. Dunivan, Esq.
brayant@theconsumerprotectionattorney.com
eservice@theconsumerprotectionattorney.com

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
IN AND FOR WASHINGTON COUNTY, FLORIDA
CIVIL ACTION

MARCIA COLLINS

     Plaintiff,                           CASE NO.: 23-CA-111

vs.

MERAKI INSTALLERS, LLC, et al.

     Defendant(s).

_____/

## ACCEPTANCE OF PROCESS

    I, William Hahn, Esq., attorney for Defendant, **MERAKI INSTALLERS, LLC** ("Defendant"), in the above-entitled action, accept service of the complaint filed in the action. Defendant shall have 20 days to file a response to the complaint.

                                BY: _____

                                   William Hahn, Esq.,
                                   ATTORNEY FOR DEFENDANT,
                                   MERAKI INSTALLERS, LLC
                                   DATED: November 8, 2023

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been provided via email service and/or U.S. Mail, as indicated below, on this 8th day of November, 2023 to the following:

THE CONSUMER PROTECTION
ATTORNEY, PA
Attorneys for Plaintiff(s).
301 W. Platt St., #216.
Tampa, FL 33606
Phone: 813.252.0239
bryant@theconsumerprotectionattorney.com
eservice@theconsumerprotectionattorney.com

        CARVER, DARDEN, KORETZKY, TESSIER, FINN, BLOSSMAN & AREAUX LLC

By: /s/ *William R. Hahn*
        Robert S. Rushing, Esquire
        Florida Bar No.: 0013946
        rushing@carverdarden.com
        Travis M. Morock, Esquire
        Florida Bar No.: 0118823
        morock@carverdarden.com
        William R. Hahn, Esquire
        Florida Bar No.: 1025424
        hahn@carverdarden.com
        151 West Main Street, Suite 200
        Pensacola, Florida 32502
        Telephone: (850) 266-2300
        Attorneys for Defendant,
        MERAKI INSTALLERS, LLC

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
IN AND FOR WASHINGTON COUNTY, FLORIDA
CIVIL ACTION**

MARCIA COLLINS,

      Plaintiff,

                                  CASE NO.: 23-CA-111

vs.

MERAKI INSTALLERS, LLC and
GOODLEAP, LLC,

      Defendants.

_____/

**DEFENDANT MERAKI INSTALLERS, LLC'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT**

COMES NOW, Defendant, MERAKI INSTALLERS, LLC ("Defendant"), by and through its

undersigned counsel, and moves this Court for an order dismissing Plaintiff, MARCIA COLLINS's

Complaint (the "Complaint"), pursuant to Fla. R. Civ. P. 1.140(b), and states the following in support:

**SUMMARY**

The Court should dismiss Plaintiff's Complaint in its entirety for improper venue[1], as Plaintiff

failed to comply with the "Choice of Law/Venue" provision of the Supply and Installation Agreement

between Meraki and Plaintiff (the "Agreement"[2]) that this action is based upon, which is incorporated

by reference in Plaintiff's Complaint pursuant to Florida Rule of Civil Procedure 1.130. The

Agreement states, in part, that: "Any action or proceeding seeking to enforce any provision of, or

based on any right arising out of, this Contract shall be filed in Escambia County Circuit Court or the

United States District Court for the Northern District of Florida, and nowhere else." The Florida

Supreme Court has held that "[w]here a contract is clear and unambiguous, it must be enforced

---

[1] By filing this Motion to Dismiss Plaintiff's Complaint for improper venue, Defendant is not waiving any other defenses
it may have, and hereby reserves the right to raise said defenses in a future response or dispositive motion in the proper
venue.

[2] A true and correct copy of the Agreement is attached hereto and incorporated herein as Exhibit "A".

pursuant to its plain language." *Hahamovitch v. Hahamovitch*, 174 So. 3d 983, 986 (Fla. 2015). Furthermore, Plaintiff fails to attach or incorporate the material portions of the Agreement.

## ALLEGATIONS IN THE COMPLAINT AND BACKGROUND

1.      On or about October 19, 2023, MARCIA COLLINS (the "Plaintiff") filed a six-count Complaint against both Defendant and GOODLEAP, LLC ("Goodleap"), alleging counts for Deceptive and Unfair Trade Practices ("Count I"), Fraud in the Execution ("Count II"), Rescission ("Count III"), Breach of Contract [Plead in the Alternative to Counts I-III] ("Count IV"), Avoiding Fraudulent Transfers ("Count V"), and TILA as to Goodleap ("Count VI").

2.       Plaintiff generally alleges that Meraki's representatives met with Plaintiff regarding procuring solar services at Plaintiff's property in Washington County, Florida.

3.       Plaintiff then generally alleges that she was presented with a sales presentation, but does not specify who made the presentation. Plaintiff goes on to allege that whoever made the sales presentation represented to Plaintiff that the installation of the solar panel system would offset or eliminate Plaintiff's utility usage; did not represent that some unspecified "amounts" were estimated; and did not represent that it was unknown that some unspecified "generation" could occur, and did not occur.

4.       Plaintiff further generally alleges that it "appears that no valid e-sign consent was provided to the Plaintiff prior to being asked to execute the sales agreement[3]. As a result of same, it appears that any disclosures purportedly given in the agreement were improper, as the e-sign consent must predate the parties agreement." **The Agreement unequivocally and clearly states that Plaintiff consents to signing the Agreement through electronic signature technology, that the electronic signature is the legally binding equivalent to her handwritten signature, and that the electronic signature has the same validity and meaning as her handwritten signature.**

---

[3] This "sales agreement" referenced in Plaintiff's Complaint is the same Agreement attached to Defendant's Motion to Dismiss as Exhibit "A".

5.    Although Plaintiff fails to attach the Agreement, it is incorporated by reference and may be considered in this Court's ruling on this Motion to Dismiss.

## LAW AND ARGUMENT

I.    Applicable Standard

6.    When ruling on a motion to dismiss, the trial court must limit itself to the four corners of the complaint, including any attached or incorporated exhibits, assuming the allegations in the complaint to be true and construing all reasonable inferences therefrom in favor of the non-moving party. Fla. R. Civ. P. 1.130(b). *See Papunen v. Bay Nat'l Title Co.*, 271 So. 3d 1108 (Fla. 3d DCA 2019).

7.    However, "where the terms of a legal document are impliedly incorporated by reference into the complaint, the trial court may consider the contents of the document in ruling on a motion to dismiss." *One Call Prop. Servs. Inc. v. Sec. First Ins. Co.*, 165 So. 3d 749, 752 (Fla. 4th DCA 2015) *See Veal v. Voyager Prop. & Cas. Ins. Co.*, 51 So.3d 1246, 1249 (Fla. 2d DCA 2011) (rejecting argument that the trial court erred by considering the contents of a settlement agreement that was attached to a motion to dismiss: "[I]n this case, the complaint refers to the settlement agreement, and in fact, Veal's standing to bring suit is premised on the terms of that agreement. Accordingly, since the complaint impliedly incorporates the terms of the agreement by reference, the trial court was entitled to review the terms of that agreement to determine the nature of the claim being alleged."). Accordingly, this Court should consider the contents of the attached Agreement, as Plaintiff's standing to bring suit is premised on the terms of that Agreement.

8.    "Where a contract is clear and unambiguous, it must be enforced pursuant to its plain language." *Hahamovitch v. Hahamovitch*, 174 So. 3d 983, 986 (Fla. 2015). "Where complaint allegations are contradicted by exhibits attached to the complaint, the plain meaning of the exhibits control and may be the basis for a motion to dismiss." *Hunt Ridge at Tall Pines, Inc. v. Hall*, 766 So. 2d 399, 401 (Fla. 2d DCA 2000) *See Southeast Med. Prod., Inc. v. Williams*, 718 So.2d 306 (Fla. 2d

3

DCA 1998). Here, based on the clear and ambiguous terms of the Agreement in which Plaintiff's suit is premised, the language of the Agreement controls over any contradicting allegations alleged in Plaintiff's Complaint, including, without limitation, Plaintiff's allegations that "[v]enue is proper at[sic] the property at issue in this litigation is located in this county" or that "no valid e-sign consent was provided to the Plaintiff prior to being asked to execute the sales agreement."

II.     The Agreement is Valid and Enforceable

9.      In the event Plaintiff attempts to argue in any way that the "Choice of Law/Venue" provision of the Agreement is not enforceable as a result of her signing the Agreement with her electronic signature, the Agreement concisely and unambiguously states:

*Electronic Signatures.  Purchaser consents to signing this agreement through electronic signature technology.   The Parties agree that their electronic signatures are the legally binding equivalent to their handwritten signatures and that their electronic signatures have the same validity and meaning as their handwritten signatures.*

10.     Plaintiff cites Florida Statutes § 668.50 for her contention that Defendant did not give her the proper disclosures under the "E-Sign Act", but does not specify the language she is relying on.

11.     Contrary to Plaintiff's allegations, Florida Statutes § 668.50 states: "(a) A record or signature may not be denied legal effect or enforceability solely because the record or signature is in electronic form. (b) A contract may not be denied legal effect or enforceability solely because an electronic record was used in the formation of the contract. (c) If a provision of law requires a record to be in writing, an electronic record satisfies such provision. (d) If a provision of law requires a signature, an electronic signature satisfies such provision." Fla. Stat. § 668.50(7)

12.     Furthermore, Fla. Stat. 668.004 states: "Unless otherwise provided by law, an electronic signature may be used to sign a writing and shall have the same force and effect as a written signature."

13.     Plaintiff further cites 15 U.S.C. § 7001(c) for her contention that Defendant did not give her the proper disclosures under the "E-Sign Act", however subsection (c) only applies "if a

4

statute, regulation, or other rule of law requires that information relating to a transaction or transactions in or affecting interstate or foreign commerce be provided or made available to a consumer in writing." 15 U.S.C. § 7001(c).

14.     Conversely, "Notwithstanding any statute, regulation, or other rule of law (other than this subchapter and subchapter II), with respect to any transaction in or affecting interstate or foreign commerce--**(1)** a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form; and **(2)** a contract relating to such transaction may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation." 15 U.S.C. § 7001(a).

15.     No provisions cited by Plaintiff would require Defendant to provide an electronic consent form to Plaintiff (beyond what is included in the Agreement) prior to the parties' execution of the Agreement, which is what it appears Plaintiff is arguing.

16.     Accordingly, any argument that Plaintiff may raise concerning the enforceability of the Agreement's "Choice of Law/Venue" provision lacks any basis in law or fact.

III.     <u>Plaintiff Does Not Comply with the Choice of Law/Venue Provision</u>

17.     "Venue selection clauses are valid." *Marine Env't Partners, Inc. v. Johnson*, 863 So. 2d 423 (Fla. 4th DCA 2003). The venue selection clause of an agreement is mandatory if it states that any action arising out of the agreement would be prosecuted in a certain county, "and nowhere else." *Mgmt. Computer Controls, Inc. v. Charles Perry Const., Inc.*, 743 So. 2d 627 (Fla. 1st DCA 1999).

18.     The Agreement expressly states as follows:

**CHOICE OF LAW/VENUE.** This Contract shall be governed in its enforcement, construction, and interpretation of the laws by the State of Florida, without giving effect to the principles of conflicts of laws. Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Contract shall be filed in Escambia County Circuit Court or the United States District Court for the Northern District of Florida, and nowhere else.

19.     Rather than file this action in either Escambia County, Florida or the United States District Court for the Northern District of Florida, Plaintiff filed in Washington County, Florida.

20.     Accordingly, this action is due to be dismissed with prejudice for improper venue.

## CONCLUSION

In sum, Plaintiff fails to comply with the "Choice of Law/Venue" provision of the Agreement by not filing this action in one of the venues agreed upon by Plaintiff and Defendant. Furthermore, the Agreement unequivocally and clearly states that Plaintiff consents to signing the Agreement through electronic signature technology, that the electronic signature is the legally binding equivalent to her handwritten signature, and that the electronic signature has the same validity and meaning as her handwritten signature. Therefore, any arguments raised by Plaintiff as to the validity and/or enforceability of the Agreement lack any basis in law or fact.

**WHEREFORE**, for the reasons stated above, Defendant respectfully requests that this Court enter an order dismissing Plaintiff's Complaint in its entirety with prejudice and for any other relief that this Court deems just and fair.

Dated this 21st day of November, 2023.

CARVER, DARDEN, KORETZKY, TESSIER, FINN, BLOSSMAN & AREAUX, LLC

By: /s/ Robert S. Rushing
        Robert S. Rushing, Esquire
        Florida Bar No.: 0013946
        rushing@carverdarden.com
        Travis M. Morock, Esquire
        Florida Bar No.: 0011823
        morock@carverdarden.com
        William R. Hahn, Esquire
        Florida Bar No.: 1025424
        hahn@carverdarden.com
        151 West Main Street, Suite 200
        Pensacola, Florida 32502
        Telephone: (850) 266-2300
        Attorneys for Defendant
        MERAKI INSTALLERS, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing document has been provided via the Florida

E-Filing Portal and/or U.S. Mail on this 21st day of November 2023 to the following:

THE CONSUMER PROTECTION
ATTORNEY, PA
Bryant H. Dunivan Jr., Esq.
Fla. Bar No.: 85206
bryant@theconsumerprotectionattorney.com
eservice@theconsumerprotectionattorney.com
301 W. Platt St., #216
Tampa, FL 33606
Phone: 813-252-0239
Attorney for Plaintiff

NELSON      MULLINS      RILEY      &
SCARBOROUGH, LLP
Terrance W. Anderson, Jr., Esq.
Fla. Bar No.: 27426
TW.Anderson@nelsonmullins.com
Jenny.Sica@nelsonmullins.com
Sophie M. Labarge, Esq.
Sophie.Labarge@nelsonmullins.com
1905 N.W. Corporate Blvd., Suite 310
Boca Raton, FL 33431
Phone: 561-343-6967
Attorneys for GOODLEAP, LLC

CARVER, DARDEN, KORETZKY, TESSIER, FINN,
BLOSSMAN & AREAUX, LLC

By: */s/ Robert S. Rushing*
    Robert S. Rushing, Esquire
    Florida Bar No.: 0013946
    rushing@carverdarden.com
    Travis M. Morock, Esquire
    Florida Bar No.: 0011823
    morock@carverdarden.com
    William R. Hahn, Esquire
    Florida Bar No.: 1025424
    hahn@carverdarden.com
    151 West Main Street, Suite 200
    Pensacola, Florida 32502
    Telephone: (850) 266-2300
    Attorneys for Defendant
    MERAKI INSTALLERS, LLC

UNOFFICIAL DOCUMENT

7



EXHIBIT A

SUPPLIER AND INSTALLATION AGREEMENT

## Supply and Installation Agreement - Residential
### (Home Improvement Contract)
Solar Contractor License - CVC57044

**Meraki Installers LLC**

**21 N New Warrington Rd**

**Pensacola, FL 32506**

### Homeowner ("Customer")

**Homeowner Name:** Marcia Collins

**Phone Number:** (850) 258-8076          **Email:** marciacollin█████████

**Installation Address ("Property")**
4155 FL-79
Vernon, FL 32462

| | |
|---|---|
| **Total Installed System Price ("Contract Price")** | $ 42,158.00 |
| **Amount Financed** | $ 42,158.00 |
| **Total Cash Amount** | $ 0.00 |
| **Deposit (Due on Effective Date)** | $0.00 |

### Description of the System to be Installed ("System")

**System Size:** 7.665          kW

**# Modules:** 21

**Sales Rep Name:** Hunter Farrar          **Sales Rep ID#:** SR-120227

**Lender:** Goodleap          **Loan Type:** 25 Year 1.99

**MERAKI INSTALLERS - STANDARD TERMS AND CONDITIONS.** The following terms and conditions form part of each purchase order or contract (such purchase order or contract being the "Contract") entered into by MERAKI INSTALLERS, LLC (the "Company") for its sale of equipment and services to a purchasing customer (the "Purchaser").

**ACCEPTANCE.** This proposal shall terminate automatically upon the expiration of a period of thirty (30) days after its date of submission unless it has been previously accepted by Purchaser or revoked by the Company. This proposal shall become a binding contract, as accepted by Purchaser, only when approved in writing hereon by the Company.

**INCLUSIONS** (collectively referred to as the "Work"). Full scope of work to be completed by Meraki Installers to include design, permitting, project management, procurement, installation, and commissioning of a solar photovoltaic grid-tied system, comprised of Tier 1, 300 watt or higher monochrystaline panels (herein 'System") as determined by the Company. Company reserves the right to deviate from the panel size, number, manufacturer and model identified in the proposal based on availability and other business reasons. Any such deviation, however, will not result in a decrease in overall system wattage. The Company will provide all project management, site supervision, and ensure all electrical labor and assembly labor is performed up to local code requirements, including proper system labelling per NEC code and an exterior electrical disconnect if required by the utility or local jurisdictions.

**COMPLETION AND DELIVERY.** The Work will commence within three months after the execution of this Agreement, unless Work is delayed by local permitting, utility approval, or inclement weather. The Company shall not be liable for any loss or damage from delay in delivery of any equipment or completion of any work as a result of causes of any kind beyond the reasonable control of the Company, such as, but not limited to, strikes or other labor difficulties, war, riots, changes in laws and regulations and other acts of governmental authorities, inclement weather, fire, flood, unavoidable casualties, delays in transportation of materials, inability to obtain timely delivery of materials from suppliers, Purchaser's request that the Work be delayed, or any other delay caused by any act or omission of Purchaser. In the event of any such delay, the Company will notify the Purchaser within a reasonable time and it is agreed that the time for delivery or completion shall be extended for a period of time at least equal to the time lost by reason of the delay. Any such unexcused delay in delivery or completion of work shall not give rise to cancellation by Purchaser. Excluding any portions of the Contract Price financed through one of the Company's approved lending partners, upfront payment of 30% of the contract price will be due to the Company on the date of contract execution. The remaining amount shall be paid within (5) business days of the completion of the solar installation. All payments will be made to Meraki Installers, LLC by cash, check, or a Company approved loan product, according to the lender's payment terms.

**FAILURE TO COMPLETE FINANCING.** Should Purchaser fail, after installation of the System, to obtain financing for the System for any reason, or should Purchaser obtain financing, but fail to complete any necessary acts for the System to be financed for any reason or should financing approval be revoked or withdrawn due to any acts or omissions of Purchaser, Purchaser agrees and acknowledges that it will be liable for the entire Purchase Price that shall be immediately due to Company within five (5) days after delivery or completion of the Work.

**PERMISSION TO OPERATE** (herein 'PTO").  Purchaser acknowledges and understands that Company will not obtain PTO for Purchaser, unless and until final approval of financing is confirmed with Purchaser's chosen lender or Purchaser pays Meraki the Contract Price in full.

**PLACEMENT/LAYOUT OF THE SYSTEM.** Purchaser acknowledges and understands that placement/layout of the System on any proposals and/or engineering drawings are only preliminary and are subject to change.  Company shall place the System, and other equipment necessary to complete the Work, in such a manner and location on Purchaser's property so as to maximize the efficiency of the  System, as determined by Company in its sole discretion.

**JOB SITE ACCESS.** Purchaser will allow Company  full, unimpeded access to the site as required by Company, including at times when Purchaser may not be present, to install the System and perform all related acts that may be necessary (such as inspections) to complete the installation process so that the system can be turned on.  Purchaser shall provide Company with adequate space at the Site  for the storage of materials, goods, and equipment.

**INSTALLATION SCHEDULING.** Purchaser agrees to provide the Company with as much notice as is reasonably possible in the event of a need to reschedule the System installation but in no event will provide Company with less than 24-hours advance notice.  In the event that Purchaser reschedules the installation without providing at least 24-hours advance notice to Company, Company may charge Purchaser a rescheduling fee of up to $250.00.

**NECESSARY APPROVALS FROM HOMEOWNERS ASSOCIATION.**   Purchaser acknowledges and understands that if Purchaser's property is subject to any rules, limitations or restrictions imposed by a homeowner's association ('HOA"), or other similar entity, Purchaser is solely responsible for complying with such rules, limitations and restrictions as they may pertain to the System.  Purchaser is solely responsible for obtaining and/or fulfilling any notice and/or approval requirements that are necessary for the Work to proceed or be completed.  Company shall not be responsible for any such third-party approval or for any issues that may arise due to Purchaser's failure to comply with any HOA rules, limitations or restrictions or to obtain any required approvals.

**THIRD-PARTY CONTRACTORS.** Purchaser acknowledges and understands that in furtherance of this Contract, and in order to maximize System production, Company may recommend Customer hire third parties to perform services for Customer, including, but not limited to, roofing, landscaping, tree trimming and removal, pool/spa, and energy efficiency work.  Purchaser agrees that it shall hold Meraki harmless for any loss or damage arising out of work performed by third-party contractors retained by Purchaser.

**WORKMANSHIP WARRANTY.** The Company warrants to the Purchaser that the System installation performed by the Company is free from defects in workmanship for a period of One Hundred and Twenty (120) months and One Hundred and Twenty (120) months on roof penetrations from the date of installation of the equipment provided that:

**a)** The equipment is used and maintained normally and properly in accordance with the Company's instructions as to maintenance and operation, whether given orally or set forth in written operation and maintenance manuals and instruction sheets furnished by the Company;

**b)** The equipment has not been changed without the prior written approval of the Company;

**c)** Purchaser gives prompt written notice to the Company before the end of the warranty period specifying all alleged defects in the workmanship; and

**d)** Purchaser permits reasonable inspection by the  Company of the System and all alleged defects.

The Workmanship Warranty is non-transferrable and is provided exclusively for the benefit of the Purchaser.  Therefore, it does not transfer to any subsequent buyer or owner of the subject property

The Workmanship Warranty applies only to the Workmanship of Company's installation of the System and excludes any defect, deficiencies or damages caused by external forces of any kind or that otherwise were not caused by the Company.  Therefore, the Workmanship Warranty shall not cover defects, deficiencies, or damages (including but not limited to roof penetrations), caused by: (a) hurricane, windstorm, tornado, tropical storm, tropical depression, thunderstorm, or lightning; (b) hail, snow, or ice; (c) vandalism, malicious mischief, theft, or a criminal  act; (d) negligent or intentional acts by any person other than the Company; (e) explosion, riot, or civil commotion; (f) aircraft or vehicles; (g) falling objects; (h) flood, fire, freezing, or smoke; (i) earth movement; (j) collapse; (k) pollution, fungi, wet or dry rot,  bacteria, or other organism; (l) animals or insects; (m) enforcement of any applicable building code or standard; (o) corrosion, abrasion, use of unsuitable lubricants, or negligent attendance or faulty operation (p) ordinary wear and tear, or (q) any defects caused by errors on the part of the Purchaser in not providing suitable premises in which the equipment is to be located, adequate foundation works, or adequate protections against influences within or outside the premises which may affect the equipment or its operation.

UNLESS OTHERWISE EXPRESSLY STATED IN ANY DOCUMENT ATTACHED TO THESE GENERAL TERMS AND CONDITIONS, THIS WARRANTY OF WORKMANSHIP IS THE ONLY WARRANTY MADE BY THE COMPANY AND IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, AND COMPANY DISCLAIMS ON BEHALF OF ITSELF, ITS SUBCONTRACTORS AND SUPPLIERS ANY AND ALL IMPLIED WARRANTIES, INCLUDING THE WARRANTIES OF MERCHANTABILITY, FITNESS FOR A SPECIFIC PURPOSE (OTHER THAN THE PURPOSE STATED IN THE PURCHASER'S SPECIFICATIONS SET FORTH IN THE CONTRACT), SUITABILITY OR PERFORMANCE.

The Company's obligation under this warranty and any other warranty or guarantee which is part of the Contract is strictly and exclusively limited to furnishing repairs of any covered defects as determined by an authorized representative of the Company. The Company assumes no responsibility and shall have no liability for any repairs or replacements by Purchaser without the Company's prior written authorization.

If the Purchaser discovers a defect that may be covered by this warranty Purchaser shall advise the Company as soon as possible after a problem is detected by telephone, followed by written confirmation, fax or email, giving detailed information of the alleged defect and the reason that Purchaser believes it is covered by this warranty. The Company and Purchaser will then mutually agree to a reasonable response time. The Purchaser will provide the Company with access to the System to inspect the alleged defect. Back charges will not be accepted by the Company unless the Company has authorized such charges prior to commencement of work, except for charges incurred to prevent an emergency; i.e., personnel safety or an occurrence of imminent hazard, etc.

Purchaser shall obtain Company's prior written approval before making any alterations to the System, its components or its configuration at Purchaser's property. The Workmanship Warranty shall be invalidated if the Purchaser makes alterations without obtaining this advance written approval.

Purchaser shall obtain Company's prior written approval before allowing any third-party to clean or service the System (or any of its components) purchased from the Company. The Workmanship Warranty shall be invalidated if the Purchaser fails to obtain this prior written approval. This paragraph shall not apply if Purchaser hires Company to clean the System.

**NATURAL/THIRD-PARTY FORCES CAN NEGATIVELY IMPACT SYSTEM PRODUCTION.** The production of the System may be negatively impacted by natural/third-party forces beyond Company's control, including, but not limited to, weather, tree growth, foliage growth, and/or adjacent construction. Therefore, Purchaser acknowledges and agrees that Company cannot guarantee System production

**LIMITED FIVE-YEAR WEAR AND TEAR SOLAR REINSTALLATION BENEFIT** ('Five-Year Reinstallation Benefit"). Company agrees that it will remove and reinstall the System installed at the Purchaser's Property, provided the roof of the Property requires replacement within five years of the initial installation of the System at the Property. For this benefit to apply, and prior to Company having any obligation to remove and reinstall the System, Purchaser must pay the sum of ($1,499.00) to Company, reinstallation must occur during the five-year period running from the execution of this Purchase Agreement, and all roofing work must be performed by Meraki. Further, this benefit will not apply where Purchaser seeks to replace the roof with a roofing system (whether in whole or in part) that differs in design, materials or type from the existing roofing system, regardless of whether such change is due to preference, necessity or any other reason.

THIS REMOVAL AND REINSTALLATION BENEFIT SHALL ONLY BE AVAILABLE IF COMPANY DETERMINES THAT ROOF REPLACEMENT IS NECESSARY DUE TO NORMAL WEAR AND TEAR OF THE ROOF, AND NO OTHER CAUSE.

Should this benefit apply and be purchased by the Purchaser, Company will remove and reinstall the System at no further cost to Purchaser. However, Customer shall be solely responsible for the storage and for any costs, expenses, or damage, by any cause, related to storage of the solar panels during the removal and replacement of the System. Company shall reinstall the System in the same functioning manner as it was in at the time of removal, and Company shall complete said removal and reinstallation at a time mutually agreeable to Purchaser and Company.

Upon discovery by Purchaser that the roof of the Property may need to be replaced due to normal wear and tear, Purchaser shall advise the Company as soon as possible but no later than thirty (30) days after discovery, by telephone, followed by written confirmation, fax or email, giving detailed information about the perceived need for roof replacement due to normal wear and tear. Company and Purchaser will then mutually agree to a reasonable response time. Purchaser will allow the Company access to the Property to inspect the roof. If Company agrees with Purchaser's request, Company shall work with Purchaser to schedule removal and reinstallation of the System. Back charges will not be accepted by the Company unless the Company has authorized such charges prior to commencement of work, except for charges incurred to prevent an emergency; i.e., personnel safety or an occurrence of imminent hazard, etc.

Items not covered by Five-Year Reinstallation Benefit. As stated above, this benefit only applies if roof replacement is necessary due to normal wear and tear of the roof, and no other cause. Therefore, this benefit shall not apply if roof repair or replacement, in whole or in part, is necessary due to any other cause, including, but not limited to: (a) damage caused by hurricane, windstorm, tornado, tropical storm, tropical depression, thunderstorm, or lightning; (b) damage caused by defective, faulty, or improper construction or installation; (c) damage caused by defective, faulty, or improper penetrations of the roof of Purchaser's residence during installation of the roof or thereafter; (d) damage caused by hail, snow, or ice; (e) damage caused by vandalism, malicious mischief, theft, or a criminal act; (f) damage caused by a negligent or intentional act by any person; (g) damage caused by an explosion, riot, or civil commotion; (h) damage caused by aircraft or vehicles; (i) damage caused by falling objects; (j) damage caused by flood, fire, freezing, or smoke; (k) damage caused by earth movement; (l) damage caused by collapse; (m) damage caused by pollution, fungi, wet or dry rot, or bacteria, or other organism; (n) damage caused by animals or insects; (o) damage or replacement caused by the enforcement of any applicable building code or standard; (p) any damage arising from corrosion, abrasion, use of unsuitable lubricants, or negligent attendance or faulty operation; or (q) damage or defects due to defective equipment, parts, items, or components comprising the System.

**DAMAGES** NOTWITHSTANDING ANY OTHER PROVISION OF THE CONTRACT TO THE CONTRARY,(A) THE COMPANY AND ITS SUBCONTRACTORS' AND SUPPLIERS' AGGREGATE RESPONSIBILITY AND LIABILITY, WHETHER ARISING OUT OF CONTRACT OR TORT, INCLUDING NEGLIGENCE AND STRICT LIABILITY, UNDER THE CONTRACT, INCLUDING, BUT NOT LIMITED TO, ALL CLAIMS FOR BREACH OF ANY WARRANTY OR GUARANTEE, FAILURE OF PERFORMANCE OR DELAY IN PERFORMANCE BY COMPANY OR PERFORMANCE OR NON-PERFORMANCE OF THE PURCHASED EQUIPMENT SHALL NOT EXCEED THE CONTRACT PRICE FOR THE PURCHASED EQUIPMENT, AND (B) IN NO EVENT SHALL COMPANY, ITS SUBCONTRACTORS OR SUPPLIERS BE LIABLE IN CONTRACT OR IN TORT, INCLUDING NEGLIGENCE AND STRICT LIABILITY, FOR ANY SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND OR CHARACTER, INCLUDING, BUT NOT LIMITED TO, LOSS OF USE OF FACILITIES OR EQUIPMENT, LOSS OF REVENUES OR PROFITS OR LOSS UNDER PURCHASES OR CONTRACTS MADE IN RELIANCE ON THE PERFORMANCE OR NON-PERFORMANCE OF THE PURCHASED EQUIPMENT, WHETHER SUFFERED BY PURCHASER OR ANY THIRD PARTY, OR FOR ANY LOSS OR DAMAGE ARISING OUT OF THE SOLE OR CONTRIBUTORY NEGLIGENCE OF THE PURCHASER, ITS EMPLOYEES OR AGENTS OR ANY THIRD PARTY.

**CHANGES.** If pursuant to the Purchaser's written direction  or  request any  change  is made  in the equipment to be furnished or the work to be performed, the agreed price shall be adjusted to reflect such change and the time for completion under the Contract shall be extended to the extent required   to make such change.

**INSURANCE.** The Company agrees to maintain liability insurance covering personal injury in an amount not less than $200,000 and insurance covering property damage caused by the work of the Company in an amount not less than $100,000. As of the date of Contract, the Company maintains insurance covering personal injury in the amount of $1,000,000 and insurance covering property damage caused by the work performed by the Company in the amount of $200,000.

**TAX CREDIT/INCENTIVE/REBATE DISCLAIMER.**  Purchaser may or may not be eligible for certain state or federal tax credit(s), incentive(s), rebate(s), benefits or deductions.  Purchaser agrees and acknowledges they have not relied on any representations from Company regarding Customer's eligibility for any state or federal tax credit(s), incentive(s), rebate(s) or other tax benefits or deductions of any kind.  Purchaser agrees and acknowledges it is their sole obligation to consult their tax professional or legal professional to determine if Purchaser qualifies for any state or federal tax credit(s), incentive(s),  rebate(s), benefits or deductions.

**DEFAULT BY PURCHASER.** In the event that the Purchaser becomes insolvent, becomes the subject of any bankruptcy proceedings, or defaults in the performance of any term or condition of the Contract, the entire unpaid portion of the purchase price shall, without notice or demand, become immediately due and payable. In any such event, the Company, at its option, without notice or demand, shall be entitled (1) to sue for said balance of the purchase price and for reasonable attorneys' fees plus out-of-pocket expenses and interest; (2)  to retain all payments previously made as compensation for the use of said equipment or parts; (3) to resell said equipment or parts at public or private sale without notice or demand for and on behalf of the Purchaser; and (4) to apply the net proceeds from such sale (after deduction from the sale price of all expenses of such sale and all expenses of retaking possession, repairs necessary to put said equipment in salable condition, storage charges, taxes, liens, collection and attorneys' charges and all other expenses in connection therewith) to the balance then due to the Company for said equipment and parts and to receive from the Purchaser the deficiency between such net proceeds of sale and such balance. The Purchaser hereby waives all trespass, damage and claims resulting from any such entry, repossession, removal, retention, repair, altercation and sale. The remedies provided in this paragraph are in addition to and not in limitation   of any other available remedy or remedies of the Company, and each and every such remedy shall be cumulative and shall be in addition to every other remedy under the Contract or now or hereafter existing at law or in equity or by statute, including, but not limited to, the ability to lien the property. No delay or omission to exercise any right or power accruing upon any default shall impair any such right or power or shall be construed as a waiver thereof, but any such right or power may be exercised from time to time and as often as may be deemed expedient.

**INTEGRATION CLAUSE.** By acceptance of this proposal, the Purchaser acknowledges (1) that it has not relied on any previous written, oral or implied representation, inducement or understanding of any kind or nature, (2) that the Company's proposal, including these Standard Terms and Conditions and any drawings incorporated in the proposal by reference, embodies the entire agreement between the Purchaser and the company and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof, (3) that the Contract entered into by acceptance of the Company's proposal by the Purchaser may not be modified or terminated except in writing signed by a duly authorized representative of the Company making specific reference to the Contract, and (4) the Purchaser may not assign the Contract without the prior written consent of the Company.

**WAIVER.** No claimed waiver of any of the provisions of the Contract shall be valid unless signed by a duly authorized representative of the Company, and the Company's waiver of one provision shall not constitute a waiver of another provision. The Company shall not be bound by any additional or different terms unless those terms are accepted in writing by an authorized representative of the Company making specific reference to this proposal. The Purchaser hereby authorizes the Company to use, except where prohibited by law, photograph or images (whether still or in video) of the installed equipment for advertising and promotional purposes (in any medium) without additional consideration.

**GOVERNING LAW.** The parties hereby agree that all rights and obligations of the parties under the Contract will be governed by the laws of the State of Florida.

**MUTUAL JURY TRIAL WAIVER.** Purchaser and Customer each hereby mutually waives its right to a trial by jury in any and all actions, disputes, or claims arising out of or in relation to this Contract.

**CHOICE OF LAW/VENUE.** This Contract shall be governed in its enforcement, construction, and interpretation of the laws by the State of Florida, without giving effect to the principles of conflicts of laws. Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Contract shall be filed in Escambia County Circuit Court or the United States District Court for the Northern District of Florida, and nowhere else.

*Electronic Signatures. Purchaser consents to signing this agreement through electronic signature technology. The Parties agree that their electronic signatures are the legally binding equivalent to their handwritten signatures and that their electronic signatures have the same validity and meaning as their handwritten signatures.*

**YOUR RIGHT TO CANCEL THIS CONTRACT.** Florida law gives you the legal right to rescind or cancel this contract without cost to you, but you must give notice of your decision to cancel within three (3) business days from the date you signed the contract. Payments made by you under the contract and any negotiable instrument executed by you will be returned within 10 business days following receipt of the seller of your cancellation notice. If you chose to cancel the contract, the lien or security interest is also canceled. Within 20 calendar days after we receive your notice to cancel, we must take the necessary steps to cancel any lien or security interest we have created in your home in conjunction with the contract. You may offer to return the property at your home or at the location of the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

In the event that you cancel this contract after (3) days have passed since the contract execution date, but before (15) days after contract execution, before the Work has been commenced, the Company shall be entitled to 10% of the Contract Price.

In the event that you cancel this contract after (15) days have passed since the contract execution date, but before (30) days after contract execution, before the Work has been commenced, the Company shall be entitled to 20% of the Contract Price. In the event that you cancel after (3) days have passed after contract execution and project installation has commenced by the Company, the Company shall be entitled to 100% of the Contract Price.   If payment is not made within 30 days of being invoiced, this debt will be considered in default. In the event of said default, you will be responsible for all of Meraki's expenses incurred in connection with the enforcement of this provision, including attorney's fees, court costs and other collection expenses.

How to Cancel: If you decide to cancel this transaction, you may do so by notifying  us in writing at the address appearing on the Contract. You may use any written statement signed and dated by you that states your intention to cancel, or you may use this notice by dating and signing it below. If you cancel by mail or telegram, you must send the notice no later than midnight of the third business day after the date of signing the contract. If you send or deliver your notice in some other way, it must be delivered to the above address not later than that time.

I Wish to Cancel

Purchaser's Name: _____ DATE: _____ /_____ /_____

**PROPERTY OWNER:** Marcia Collins          **CO-OWNER:**

Signature:                              Date:          Signature:                    Date:
                                        03/28/2022                                   03/28/2022

*Marcia Collins*

_____    _____    _____    _____

**CONTRACTOR:** Meraki Installers, LLC - Hunter Farrar

Signature:                              Date:
                                        03/28/2022

*Hunter Farrar*

_____    _____

## Please attach the following documents:

**1) Utility Bill (second pg.)**

**2) Proposal**

**3) Customer Drivers License / State ID**

**4) Additional Docs** _____

**5) Additional Docs** _____

**6) Additional Docs** _____

UNOFFICIAL DOCUMENT

## FLORIDA STATUTORY DISCLOSURES

**ACCORDING TO FLORIDA'S CONSTRUCTION LIEN LAW (SECTIONS 713.001-713.37, FLORIDA STATUTES), THOSE WHO WORK ON YOUR PROPERTY OR PROVIDE MATERIALS AND SERVICES AND ARE NOT PAID IN FULL HAVE A RIGHT TO ENFORCE THEIR CLAIM FOR PAYMENT AGAINST YOUR PROPERTY. THIS CLAIM IS KNOWN AS A CONSTRUCTION LIEN. IF YOUR CONTRACTOR OR A SUBCONTRACTOR FAILS TO PAY SUBCONTRACTORS, SUB-SUBCONTRACTORS, OR MATERIAL SUPPLIERS, THOSE PEOPLE WHO ARE OWED MONEY MAY LOOK TO YOUR PROPERTY FOR PAYMENT, EVEN IF YOU HAVE ALREADY PAID YOUR CONTRACTOR IN FULL. IF YOU FAIL TO PAY YOUR CONTRACTOR, YOUR CONTRACTOR MAY ALSO HAVE A LIEN ON YOUR PROPERTY. THIS MEANS IF A LIEN IS FILED, YOUR PROPERTY COULD BE SOLD AGAINST YOUR WILL TO PAY FOR LABOR, MATERIALS, OR OTHER SERVICES THAT YOUR CONTRACTOR OR A SUBCONTRACTOR MAY HAVE FAILED TO PAY. TO PROTECT YOURSELF, YOU SHOULD STIPULATE IN THIS CONTRACT THAT BEFORE ANY PAYMENT IS MADE, YOUR CONTRACTOR IS REQUIRED TO PROVIDE YOU WITH A WRITTEN RELEASE OF LIEN FROM ANY PERSON OR COMPANY THAT HAS PROVIDED TO YOU A 'NOTICE TO OWNER.' FLORIDA'S CONSTRUCTION LIEN LAW IS COMPLEX, AND IT IS RECOMMENDED THAT YOU CONSULT AN ATTORNEY.**

ANY CLAIMS FOR CONSTRUCTION DEFECTS ARE SUBJECT TO THE NOTICE AND CURE PROVISIONS OF CHAPTER 558, FLORIDA STATUTES.

### FLORIDA HOMEOWNERS' CONSTRUCTION RECOVERY FUND

PAYMENT, UP TO A LIMITED AMOUNT, MAY BE AVAILABLE FROM THE FLORIDA HOMEOWNERS' CONSTRUCTION RECOVERY FUND IF YOU LOSE MONEY ON A PROJECT PERFORMED UNDER CONTRACT, WHERE THE LOSS RESULTS FROM SPECIFIED VIOLATIONS OF FLORIDA LAW BY A LICENSED CONTRACTOR. FOR INFORMATION ABOUT THE RECOVERY FUND AND FILING A CLAIM, CONTACT THE FLORIDA CONSTRUCTION INDUSTRY LICENSING BOARD AT THE FOLLOWING TELEPHONE NUMBER AND ADDRESS:

**Construction Industry Licensing Board**
**2601 Blair Stone Road**
**Tallahassee, Florida 32399-1039**
**Phone (850) 487-1395**

Customer Signature:

*Marcia Collins*

Date:
03/28/2022





# MERAKI SOLAR

# ADDITIONAL SERVICES AGREEMENT

**This Package is for:**

Marcia Collins
4155 FL-79
Vernon, FL  32462
(850) 258-8076
marciacollins2010@gmail.com

| LED Lights | Nest Thermostat | AeroSeal |
|---|---|---|
| | 1 Nest Thermostat(s) | AeroSeal for 1 AC Unit(s) |

| | |
|---|---|
| Off-Limits Roof Faces: | No |
| 25 Year Extended Workmanship: | Yes |

| | | | |
|---|---|---|---|
| Meraki Representative Name: | Hunter Farrar | | |
| Signature: | *Hunter Farrar* | Date: | 03/28/2022 |
| Owner Signature: | *Marcia Collins* | Date: | 03/28/2022 |
| Trainee Deal (Y/N): | No | | |
| Trainee Name: | | Trainee ID: | |

Meraki does not offer any warranties or guarantees with any of the above products. Replacement of light bulbs is limited to select types of standard light bulbs. Any specialty bulb types not stocked will not be replaced. In the event that the solar installation is cancelled for any reason, you will be obligated to the following charges on any products received/installed prior to the cancellation date to cover time, labor, and equipment costs: $2500 for Aeroseal, $300 for each nest thermo-stat received, $450 for LED lighting package, and $2000 for each pool pump. Meraki may choose to subcontract these services.

DISTRIBUTED ENERGY GENERATION SYSTEM PURCHASE DISCLOSURE FORM

Pursuant to Chapter 520, Part II, Florida Statutes, this disclosure is designed to help you understand the terms and costs of your purchase of a distributed energy generation system ('System'). It is not a substitute for the contract ('Contract') and other documents associated with this transaction. All information presented below is subject to the terms of the Contract.

Read all documents carefully so you fully understand the transaction

| SELLER | INSTALLER |
|---|---|
| **Name:** Meraki Installers, LLC | **Name:** Meraki Installers, LLC |
| **Address:** 21 N. New Warrington Road Pensacola, FL 32506 | **Address:** 21 N. New Warrington Road Pensacola, FL 32506 |
| **Phone Number:** (850) 220-6533 | **Phone Number:** (850) 220-6533 |
| **Email:** customersupport@merakisolutions.com | **Email:** customersupport@merakisolutions.com |
| **License # (if applicable):** CVC57044 | **State Contractor License #:** CVC57044 |

| WARRANTY/MAINTENANCE PROVIDER (If different from Installer) | |
|---|---|
| **Name: N/A** | **Address:N/A** |
| **Phone Number:N/A** | **Email:N/A** |
| **State Contractor License #: N/A** | |

| CUSTOMER | |
|---|---|
| **Name:** Marcia Collins | **Address:** 4155 FL-79, Vernon  FL 32462 |
| **Phone Number:** (850) 258-8076 | **Email:** marciacollins2010@gmail.com |

**\*NOTE: YOU ARE ENTERING INTO AN AGREEMENT TO PURCHASE A DISTRIBUTED ENERGY GENERATION SYSTEM. YOU WILL OWN (NOT LEASE) THE SYSTEM INSTALLED ON YOUR PROPERTY.**
**YOU ARE RESPONSIBLE FOR PROPERTY TAXES ON PROPERTY YOU OWN. CONSULT A TAX PROFESSIONAL TO UNDERSTAND ANY TAX LIABILITY OR ELIGIBILITY FOR ANY TAX CREDITS THAT MAY RESULT FROM THE PURCHASE OF YOUR DISTRIBUTED ENERGY SYSTEM.**

| Purchase Price (A) | Payment Schedule (B) | Financing (C) |
|---|---|---|
| Your purchase price: $42,158<br><br>State or federal tax incentive(s) or rebate(s) relied upon by seller in determining the price of the System: **N/A**<br><br>Value of Incentive/Rebates Included: $0.00<br><br>**\*NOTE:** You may or may not be eligible for all incentives available in your area. Consult your tax professional or legal professional for further information. | Amount you owe Seller at Contract signing: $0.00<br><br>Amount you owe Seller at the commencement of installation: $0.00<br><br>Amount you owe Seller at the completion of installation: $42,158.00<br><br>which is the final payment.  Amounts owed by you may be paid by your Lender on your behalf where system is financed.<br><br>You will make a final payment to Seller in the amount of $ ___N/A___ at the following time (e.g., interconnection). | The System: WILL be financed.<br><br>The Seller: WILL assist in financing.<br><br>**NOTE:** If your System is financed, carefully read any agreements and/or disclosure forms provided by your lender. **This statement does not contain the terms of your financing agreement.** If you have any questions about your financing arrangement, contact your finance provider before signing a Contract. |

Other Possible Fees (D)

**Late Charge:**
If a payment is more than **30** days late, late payments accrue interest at 18% annually not to exceed the maximum allowable by law.
**Estimated System Removal Fee:**  $150.00 per panel
**Maintenance Fee:** $ ___N/A___
**UCC Notice Removal and Re-filing Fee:** If you refinance your mortgage, you may have to pay $ N/A as to Seller.  Please reference any applicable financing documents.
**Returned Checks:** If any check or withdrawal right is returned or refused by your bank, you may be charged $30.00 (or a lower amount if required by law)
**Non-Connection to Internet:** If you do not maintain a high-speed internet connection, you will be charged a monthly fee of $**N/A** and/or your monthly payments may be based upon estimates. Non-connection may affect any guarantee. **See Section N.**
**Automated Clearing House (ACH) Fee:** $__N/A__

| Total Cost (E) | Installation Timing (F) | Interconnection Approval (G) |
|---|---|---|
| Total cost to be paid, including any interest, installation fees, document preparation fees, service fees or other () fees. $42158.00<br><br>Please see any applicable financing documents for additional financing fees. | Approximate Start Date:+60 days from the date the agreement is signed or 2022-05-27 (date).<br><br>Approximate Completion Date: **74** days from the date the agreement is signed. | ☐ **YOU** are or ☑ **SELLER** is responsbile for submitting a System interconnection application<br><br>**NOTE:** It is important to understand the requirements of interconnection rules and/or policies for renewable energy systems which may vary based on location or utility jurisdiction. For further information regarding interconnection standards, please contact your local utility or public service commission. |

## Site & Design Assumptions for your Purchase (H)

- Estimated size of the System in kilowatts: 7.665(kWdc)
- Estimated gross annual electricity production in kilowatt-hours (kWh) from your leased System in the first year of the Lease: **N/A**
- Estimated annual System production decrease due to natural aging of the System: 0.5%
- System location on your property: Roof Mount
- System ☑ **WILL** ☐ **WILL NOT** be connected to the electric grid
- At the time of installation, your local utility ☑ **DOES** ☐ **DOES NOT** credit you for excess energy your System generates. The rules applying to such credit are set by your jurisdiction.
- Make: Trina
- Model: TSM-DD06M.05(II) or comparable tier one monocrystalline solar module.

**\*NOTE:** A seller who provides a warranty or guarantee of the energy production output of the distributed energy generation system may provide a description of such warranty or guarantee in lieu of a description of the system design and components.

## Security Filings (I)

Seller ☐ **WILL** ☑ **WILL NOT** place a lien on your home as part of entering the Contract.
Seller ☐ **WILL** ☑ **WILL NOT** file a fixture filing or a State of Florida UCC Financing Statement Form (UCC-1) on the System. The UCC-1 is a public filing providing notice that Seller owns the System, but is not a lien.

*However if the system is installed and payment is not received, a lien may be placed on your property.*

## System Maintenance & Repairs (J)

"System maintenance" refers to the upkeep and services required or recommended to keep your System in proper operation. System maintenance **IS NOT** included.

"System repairs" refers to actions needed to fix your System if it is malfunctioning.
System repairs ☑ **ARE** ☐ **ARE NOT** provided by the Installer or Manufacturer, pursuant to provisions and exclusions included in your contract.

Please review your Contract for additional information about any warranties on the System installation and equipment. Certain exclusions may apply. Note that equipment warranties for hardware are not required to include labor/workmanship.

Roof Warranty (K)

Your roof ☑ **IS** ☐ **IS NOT** warranted against leaks from the System installation for 10 years by Installer pursuant to provisions and exclusions included in your contract.

Your roof ☐ **IS** ☑ **IS NOT** warranted against leaks caused by removal of the System for a period of <u>N/A</u> years following System removal. Any portions of your roof impacted by the System ☐ **WILL** ☑ **WILL NOT** be substantially returned to their original condition upon the removal of the System (ordinary wear and tear excepted).

Modification/Transfer of System Ownership and Selling Your Home (L)

If you sell your home, you ☑ **MAY** ☐ **MAY NOT** transfer ownership to the purchaser(s) of your home. If transfer of ownership is permitted, the transfer will be subject to the following conditions:

☐ Transfer fee of $ N/A
☐ Assumptions of the Contract by purchaser(s)
☑ Assumptions of the Finance Agreement by purchaser(s)
☐ Other

If you sell your home, you ☑ **ARE** ☐ **ARE NOT** permitted to transfer the System to a new home or property. Subject to your finance agreement to which Seller is not a party. Seller is not obligated to provide services in conjunction with transfer.

You may also have the option(s) to purchase the System or prepay some or all of the Outstanding Finance Balance as part of or prior to a transfer. Whether such option exists will be determined by the terms of any applicable finance agreement.

You ☑ **ARE** ☐ **ARE NOT** permitted to make modification(s) to the System. If modification(s) of the System is permitted, such action will be subject to the following conditions:

☑ System guarantees or warranties ☑ **ARE** ☐ **ARE NOT** rendered void
☑ Provider is not responsible or liable for any loss or damage that may occur as a result of any modifications
☑ Other: Refer to any applicable finance agreements.

System Guarantee (N)

In terms of your full System, Seller is providing you with a:

☐ System performance or electricity production guarantee*
☐ Other type of System guarantee*
☑ No System guarantee

You may have guarantees or warranties offered or provided by the Manufacturer.

***Please provide a description in the space provided under Section S.***

Utility and Electricity Usage/Savings Assumptions (O)

You ☑ **HAVE**  ☐ **HAVE NOT** been provided with a savings estimate ('Estimate') based on your Contract.

If you **HAVE** been provided with an Estimate, Seller provides the following:

Seller ☐ **IS**  ☑ **IS NOT** guaranteeing these savings.

Your Estimate was calculated based upon information provided by the Owner relating to one or more of the following:
- ☑ Your estimated prior electricity use
- ☑ Your actual prior electricity use
- ☑ Your estimated future electricity use

Your Estimate assumes the following:
- ☑ Years of electricity production from the System: 25
- ☑ A current estimated utility electricity rate of $0.1526 [cost per kilowatt-hour] during the first year of System operation with estimated increases of 3 percent annually. Seller based this estimate on the following source(s): Utility Information provided by the Customer.
- ☑ Your utility will continue to credit you for excess energy your System generates at
  - ☐ **ESTIMATED FUTURE**
  - ☑ **CURRENT** utility electricity rates

**NOTE:** It is important to understand that future electric utility rates are estimates only. Your future electric utility rates and actual savings may vary. For further information regarding rates, you may contact your local utility or the public regulation commission. Tax and other state and federal incentives are subject to change or termination by executive, legislative or regulatory action, which may impact savings estimates. Please read your Contract carefully for more details.

Renewable Energy Certificates (RECs) (P)

N/A

Cooling Off Period/Right to Cancel (Q)

You have the right to terminate the Contract without penalty within 3 business days after the agreement is signed by both parties by notifying Provider in writing at the above address. NOTE: This section does not apply IF contract is to sell a distributed energy generation system in a solar community in which the entire community has been marketed as a solar community and all of the homes in the community are intended to have a distributed energy generation system, or a solar community in which the developer has incorporated solar technology for purposes of meeting the Florida Building Code in s. 553.73, F.S.

Insurance Policies and Coverage (R)

You are responsible for obtaining insurance policies or coverage for any loss of or damage to the System. Consult an insurance professional to understand how to protect against the risk of loss or damage to the System.

| Additional Disclosures or Terms (S) |
|---|
| |

UNOFFICIAL DOCUMENT

Name: Marcia Collins

Title: _                    Company:_

Signature: _Marcia Collins_

Date: _03/28/2022_